[No. 1248.]

MULNIX AND HOPE v. SPRATLIN AND ANDERSON.

1. PROMISSORY NOTES—RELEASE OF MAKER—RIGHTS OF INDORSEE.
As a general rule, if an indorsee of a promissory note enters into a contract with the maker of the note whereby the debt is extinguished as to the maker, the liability of the indorser is also extinguished, but where the indorser himself joins in the contract and together with the indorsee releases the maker, the rule has no force, and the indorser may still be held upon his indorsement. The reason for the rule is that the indorsee may not impair the indorser's right

of action against the maker after having paid the note, but when the indorser himself releases this right the reason having ceased to exist the rule fails also.

2. ATTACHMENTS.

The statute of 1894 amending the attachment law so as to repeal certain grounds for attachment did not affect suits pending at the time of the passage of the act.

*Error to the District Court of Pueblo County.*

Mr. FRED BETTS, for plaintiffs in error.

Mr. JOHN R. DIXON, for defendants in error.

THOMSON, P. J., delivered the opinion of the court.

On the 21st day of August, 1893, the Bessemer Ditch Company executed and delivered to Hope and Mulnix three promissory notes, one for $696.34, payable ninety days from date, one for $175, payable ninety days from date, and one for $559, payable sixty days from date. There were paid on the first note, October 20, 1893, $160.40, and November 18, 1893, $25.00. On the second note there were two payments of $50.00 each, one made on August 23, 1893, and the other on August 25, 1893. Nothing was paid on the third note. On November 27, 1893, Hope and Mulnix, for a valuable consideration, indorsed these several notes to Spratlin and Anderson. On the 28th day of November, 1893, Spratlin and Anderson commenced their action against Hope and Mulnix in the county court of Pueblo county, alleging the execution and delivery of the notes by the ditch company to the defendants, the payments made, the indorsement to the plaintiffs, and the insolvency of the ditch company, and demanded judgment against the defendants for the amount due on the notes. For some reason which does not appear, no answer was made to the complaint until December 7, 1894. On that day, however, the defendants answered admitting the execution and indorsement of the notes and the insolvency of the ditch company, and alleging that after the insti-

tution of the suit, and on May 25, 1894, by a contract entered into between the representatives of the first mortgage bondholders of the ditch company and the general creditors of the company, among whom were the plaintiffs, whereby the creditors accepted the covenants and agreements of the bondholders in lieu of their claims against the ditch company, the defendants were discharged from liability on their indorsements. This contract will be considered more in detail in another connection. The judgment in the county court was for the defendants, and the plaintiffs appealed to the district court, where judgment was rendered in their favor for the amount then due on the notes. The defendants have brought the case into this court by writ of error.

The notes were made and payable in this state, and indorsed in this state. The remedy of the indorsees is therefore governed by the laws of this state. By the act concerning bills, bonds and promissory notes (General Statutes, sec. 107), an indorsee may maintain an action against his indorser if he has used due diligence by the institution and prosecution of a suit upon the note against the maker, or, without such suit, if its institution would have been unavailing. It is agreed on both sides that at the time of the indorsements the ditch company was, and continued to be, irremediably insolvent. The right therefore, of the plaintiffs to judgment was indisputable, unless by virtue of the contract into which they entered with the representatives of the bondholders, the right was lost. At the time the plaintiffs commenced their action, the liability of the defendants was complete; and the main question in the case is whether what the plaintiffs subsequently did operated to extinguish the liability. Whether it so operated or not depends upon the effect to be given to the contract; and to reach a satisfactory solution of the question, the contract, its purposes, and the circumstances under which it was made, must receive something more than a merely general examination.

On the 14th day of November, 1889, the ditch company executed a deed of all its property, assets and franchises,

to the New York Security and Trust Company, as trustee, to secure an issue of its first mortgage bonds, amounting to $200,000, bearing interest at seven per cent. This deed was duly recorded. On the 25th day of May, 1894, these bonds were outstanding, the ditch company had made default in the payment of the interest, and the trustee for the bondholders was about to foreclose the trust deed for the payment of the full amount, principal and interest. At this time there were outstanding unsecured debts of the company, amounting in the aggregate to $15,586.72, and there was due to the company, on assessments before that time levied by it against its stockholders, the sum of $14,480.13. On that day, in pursuance of a plan of reorganization, embodied in an agreement between its stockholders and the holders of its bonds, which provided for the foreclosure of the trust deed, the sale of the company's property, and its purchase by the trustee of the bondholders, the contract alleged in the answer was made. It was entered into between the trustee of the bondholders and a committee appointed to represent them, and the Bessemer Ditch Company, of the one part, and the general creditors of the company of the other, and provided that the delinquent assessments should be collected by the ditch company and paid to a trustee to be selected by the general creditors, and by him divided among them pro rata; and the creditors covenanted and agreed that all suits and legal proceedings pending against the ditch company on account of the debts due them from the company, should be dismissed, and that no further action or proceeding should be commenced against the company on account of such debts. They also covenanted and agreed that they would accept the amounts collected on the delinquent assessments in lieu of all legal obligations of the ditch company. The creditors selected a trustee, who had, prior to the judgment, collected and paid over a portion of the delinquent assessments, and the share to which the indebtedness in suit was entitled was credited to the defendants, and allowed by the court in reduction of the judgment. The contract was signed by the plaintiffs, and also by the defendants.

The position of the defendants is that by the contract the plaintiffs discharged the maker of the notes, and that by discharging the maker they also discharged the indorsers. It is entirely settled, as a general rule, that if an indorsee enters into a contract with the maker of the note, whereby the debt, as against the latter, is extinguished, the liability of the indorser is at an end. The reason of the rule is that the indorser, after having paid the note, is entitled to proceed against the maker for reimbursement; and if by the unauthorized act of the indorsee his right to so proceed is cut off, it would be inequitable to hold him on his indorsement. To deprive the indorser of his remedy against the maker, and still compel him to make good his contract of indorsement, would be grave and manifest injustice. And it is not necessary that the remedy which the indorser would have should be absolutely destroyed. If it is merely impaired, if it is made less effective, if he is deprived of some right which he would have in connection with his remedy, the result is the same. See Daniel on Negotiable Instruments, § 1306, *et seq*. But where the indorser has himself released the maker from liability, the rule has no force. The reason having ceased to exist, the rule fails also. The law protects the indorser against any unauthorized act of the indorsee by which his right, upon payment, to hold the maker, is extinguished or compromised; but it does not protect him against the consequences of an act of his own by which the same result is accomplished. The defendants were parties to the contract, they affixed their signatures to it, and by its terms they agreed to bring no suit against the ditch company upon the notes; they agreed that the share of the delinquent assessments to which the notes were entitled, should be received in discharge of the company's liability upon the notes. If after payment of the judgment, the defendants should seek reimbursement from the ditch company by suit, the latter could successfully plead their own agreement in bar of their action. They voluntarily and effectually relinquished any remedy against the company to which they might succeed, and they are not in a

position to claim that their remedy was lost through the act of the plaintiff.

In *Teirnan's Executors v. Woodruff*, 5 McLean, 350, it was held that where the maker of a note was a discharged bankrupt, an agreement between him and the holder for two months' delay, although on a valid consideration, did not discharge the indorser, because the latter could not, by making payment, have recourse against him. In that case there was no concurrence in the agreement by the indorser, but he was held nevertheless liable, because the agreement did not operate in any way to his prejudice. Here the act of the plaintiffs was not only not to the prejudice of the defendants, but was to the very contrary. The defendants had no recourse against the maker, because they surrendered it, and surrendered it for a consideration of which they would receive the direct benefit. The plaintiffs were already secured by the defendants' indorsements; they had a suit pending to enforce the defendants' liability; as they were the holders of the notes their signatures to the contract were necessary to enable the defendants to avail themselves of the proposition of the bondholders, which afforded the only opportunity for a creditor of the company to realize anything on his debt, and to all appearances their act in signing the contract was solely for the purpose of lightening the burden of the defendants. Of course the latter are entitled to credit for all that has been, or may be, made out of the delinquent assessments, but under the circumstances of the case we do not regard the fact that the plaintiffs signed the contract as a valid defense to the action upon the indorsements.

Some time after the action was commenced, the plaintiffs sued out a writ of attachment and instituted proceedings in garnishment. The garnishee answered that he was in possession of a sum of money which had been paid to him for the defendants, and also stated that a notice had been served upon him that the defendants had assigned the money to one E. T. Mulnix. The answer of the garnishee contains the only mention of an assignment to be found in the entire record.

The court adjudged the money in the garnishee's hands to the plaintiffs. The defendants say that while the attachment was pending, an act of the legislature took effect repealing the sole ground upon which the writ was issued; that the act contained no saving clause; that the attachment fell with the law on which it was based; and that, therefore, the court erred in awarding the money to the plaintiffs. This is the only ground upon which the order concerning the money is attacked. This court has recently decided that the act referred to had no effect upon attachment proceedings pending when it became a law. This objection was therefore groundless. *Day v. Madden*, 48 Pac. 1053.

There was no proof of an assignment to E. T. Mulnix. No question is made upon the effect of the notice to the garnishee. It is not alluded to in any assignment of error, and counsel for the defendants makes no point upon it in his argument. Therefore we cannot do otherwise than ignore it. There is no error in the record, and the judgment will be affirmed.

*Affirmed.*